```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
SAM CARRELL

                Plaintiff,                          MEMORANDUM AND ORDER

          - against -                                 18 Civ. 694 (NRB)

ORIGAMI OWL, LLC and
DOES 1 through 10, inclusive,

                Defendants.
----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Sam Carrell, who owns a dog of some purported repute, brought this intellectual property suit against jewelry company Origami Owl, LLC ("Origami"), alleging that Origami engaged in copyright infringement by using, in connection with a promotional campaign for a line of pet accessories, an artist's original rendering of a dog, which rendering Carrell claims mimics a photograph of her dog for which she is the exclusive rights holder. Carrell now moves for leave to amend her complaint in order to add a claim of contributory copyright infringement, which also alleges that Origami's image mimics Carrell's dog photograph, as well as claims of trademark infringement, contributory trademark infringement, and false designation of origin, which allege that Origami's image mimics a so-called logo purportedly used by Carrell in connection with the promotion of her dog. Origami opposes

the proposed amendments and cross-moves for judgment on the pleadings, arguing that Carrell's complaint -- whether or not amended -- fails to plausibly allege claims for relief.  For the reasons set forth below, Origami's motion for judgment on the pleadings is granted, while Carrell's motion for leave to amend is denied.

I.   **Factual Background**

Little factual background is needed to understand our resolution of the pending motions, which are based on little more than the parties' competing assessments of certain pictures set forth herein.

The first picture of import is Carrell's copyrighted photograph of her dog, Tinkerbelle ("the Tinkerbelle picture"):



The second -- a pictorial announcement of Origami's then-forthcoming "PAWS collection" of pet accessories -- features, alongside an enlarged image of a PAWS locket, an artist's rendering[1] of a dog wearing the locket as well as a tag labeled "Lucy" ("the Lucy picture"):



Origami circulated the Lucy picture in July 2017 to its independent distributors, some of whom then posted the same to their social media accounts. Origami also displayed the Lucy picture on its website for eight days in early August 2017.

The third relevant picture is a federally registered trademark purportedly used by Carrell as a logo in connection with the promotion of Tinkerbelle ("the Tinkerbelle logo"):

---

[1] Origami asserts -- and Carrell does not contest -- that the rendering is derived from a painting that Origami commissioned.



While Carrell claims that she began using the Tinkerbelle logo in commerce in July 2014, she did not obtain a trademark registration for it until February 27, 2018 -- several months after Origami made use of the Lucy picture and more than a month after Carrell filed this suit.

Carrell's original complaint advances a claim of copyright infringement based on alleged similarities between the Lucy picture and the Tinkerbelle picture. Carrell now seeks to amend her complaint primarily to add a claim of trademark infringement based on alleged similarities between the Lucy picture and the Tinkerbelle logo. Origami insists that neither iteration of Carrell's complaint states a plausible claim for relief.

**II. Legal Framework**

Though the parties cross-move for different forms of relief, both of their motions are governed by the familiar standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006) ("The standard

for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss . . . ."); Krys v. Pigott, 749 F.3d 117, 134 (2d Cir. 2014) (stating that a motion for leave to amend a complaint under Rule 15(a)(2) should be denied as futile where "the proposed new pleading [would] fail[] to" survive a Rule 12(b)(6) motion to dismiss[2]).  In other words, the sole question presented by the parties' motions is whether Carrell -- through either her original or newly proposed complaint -- has stated any claims upon which relief can be granted. Thus, instead of addressing separately each motion, this

---

[2] Other bases for denying a motion for leave to amend a complaint include "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, [and] undue prejudice to the non-moving party."  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).  Origami argues that only one of these other bases -- bad faith or dilatory motive -- is applicable in this case.

We summarily reject Origami's argument that Carrell has sought to amend her complaint in bad faith.  That argument, which is primarily based on the assertion that Carrell's motion was filed solely in anticipation of an adverse ruling on Origami's motion for judgment on the pleadings, is belied by the fact that Carrell provided Origami with a draft of the amended complaint before the motion for judgment on the pleadings was filed.  See Am. Med. Ass'n v. United Healthcare Corp., No. 00CIV2800LMM, 2006 WL 3833440, at *5 (S.D.N.Y. Dec. 29, 2006) ("Defendants' assertion that Plaintiffs made this motion in anticipation of an adverse ruling on Defendants' summary judgment motion is belied by the fact that Plaintiffs provided a draft of the [amended complaint] to Defendants . . . before Defendants had filed their motion for summary judgment.").  Moreover, Carrell telegraphed her intention to seek leave to amend her complaint at the initial conference in this case, during which the parties agreed to postpone the filing of any motions until a particular witness had been deposed.  The Court declines to deem dilatory Carrell's filing of her motion in accordance with that agreement.  As a result, the remainder of this Memorandum and Order addresses only futility as a basis for denying Carrell's motion for leave to amend her complaint.

Memorandum and Order proceeds by addressing *seriatim* the sufficiency of each claim.

**III. Analysis**

    **A. Copyright Infringement**

In order to state a claim for copyright infringement, a plaintiff must plausibly allege that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010) (internal quotation marks omitted). For purposes of the instant motions, the Court assumes that Carrell has plausibly alleged actual copying by Origami. See id. "Accordingly, the principal issue . . . is whether [Carrell has plausibly alleged that] a substantial similarity exists between [the Lucy picture] and the *protectible* elements of [the Tinkerbelle picture]."[3] Id. (emphasis added); see Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 101 (2d Cir. 2014) ("[T]he term 'substantial similarity' is properly reserved for similarity

---

[3] "[W]here, as here, the works in question are [included in the pleadings], it is entirely appropriate for the [Court] to consider the similarity between those works in connection with a motion to dismiss, because the [C]ourt has before it all that is necessary in order to make such an evaluation." Id. at 64.

6

that exists between the protected elements of a work and another work."). In short, she has not.

To an overwhelming (and dispositive) extent, the common elements of the images at issue "fall [squarely] within the *scènes à faire* doctrine," which renders "unprotectible elements [of a work] that follow naturally from [the] work's theme rather than from [the] author's creativity." Silberstein v. John Does 1-10, 242 F. App'x 720, 722 (2d Cir. 2007) (internal quotation marks omitted). Courts routinely apply the *scènes à faire* doctrine (or analogous reasoning) to "elements of pictorial, graphic, or sculptural works that do no more than depict an animal's natural appearance," L.A. T-Shirt & Print, Inc. v. Rue 21, Inc., No. 16-CV-5400 (RA), 2017 WL 3575699, at *5 (S.D.N.Y. Aug. 17, 2017), as such features inhere in the subject animals themselves rather than flow from any artist's imagination. See, e.g., Nola Spice Designs, L.L.C. v. Haydel Enters., Inc., 783 F.3d 527, 551 (5th Cir. 2015) ("[A]natomical features on replicas of animals are ideas not entitled to copyright protection."); Blehm v. Jacobs, 702 F.3d 1193, 1204 (10th Cir. 2012) ("[C]ommon anatomical features such as arms, legs, faces, and fingers . . . are not protectable elements."); Billco Int'l, Inc. v. Charles Prods., Inc., 776 F. Supp. 2d 105, 114 (D. Md. 2011) ("[W]hen works contain realistic depictions of

7

animals . . . , the scope of the copyright protection for the work may be limited because the features and behavior of animals in nature are part of the public domain."). While the "*original expression* of an animal's appearance may be eligible for copyright protection," L.A. T-Shirt, 2017 WL 3575699, at *5 (emphasis added) (invoking the example of Franz Marc's blue horses), the few elements of the Tinkerbelle picture's depiction of a dog that Carrell even claims to be original are (at best) modestly so, and it is the unoriginal elements that predominate.

According to Carrell, the original elements of her work include Tinkerbelle's "gaze and expression," "pose," and "grooming." ECF No. 33 at 8-9. Carrell is correct that such elements of a dog's appearance are not necessarily physiologically mandated. But the manner in which those elements are expressed in the Tinkerbelle picture is far from distinctive. For example, by Carrell's own description, Tinkerbelle's "gaze and expression" simply amounts to her "looking directly at the viewer . . . with [a] closed mouth[] and calm expression[]." Id. at 9. Depicting the subject of an image as facing the viewer involves little (if any) creativity, and Tinkerbelle's calm and closed-mouth expression hardly qualifies as an expression at all. As for Tinkerbelle's pose -- which Carrell describes as "sitting,

8

with [her] head[] cocked slightly to the right and [her] neck[] . . . outstretched slightly," id. at 8 -- "an artist may not use copyright law to prevent others from depicting [an] idea[] first expressed by nature," and "no one would argue that the position of a dog sitting [i]s not [such] an idea," Folkens v. Wyland Worldwide, LLC, 882 F.3d 768, 775-76 (9th Cir. 2018). Finally, while Tinkerbelle is shown groomed, with "her fur [] cropped closely by her ears, [and] some fur made to stick out at the top and sides of [her] head," her appearance is far from uncommon among dogs of the papitese or shih tzu breeds, to name a few. ECF No. 33 at 9. Though Carrell insists that that manner of grooming "is not the way that a dog looks in nature," her claim is nearly too clever by half, as dogs, like humans, do not typically appear in their "natural" state, per se; much in the way that a generically-depicted man would be clean-shaven, a generically-depicted dog would be groomed.

Cases in and out of this Circuit are instructive. In L.A. T-Shirt, for example, the court concluded that "several elements of [the] [p]laintiffs' animal designs" -- pictured below alongside the defendant's allegedly infringing designs -- were "eligible for copyright protection." 2017 WL 3575699, at *6.



Id. at *8. In particular, the court emphasized the originality of the "distinctive arrangement of geometric shapes, including stripes of triangles and diamonds of varying sizes," covering the animals; "the placement of accessories, including red sunglasses, a feathered headdress, and a red cup on the" animals -- features that are neither "reflect[ive] [of] an effort to produce an anatomically correct" animal nor "common . . . as would be, for example, a collar on the neck of a dog"; the "unique arrangement of contrasting colors, including various shades of turquoise, ivory, and red," which "do not correspond to the natural color of" the animals; and the animals' "distinctive poses," described as "holding what appear to be cheap plastic cups

10

often associated with parties and staring into the distance through a pair of sunglasses." Id. at *6-7 (internal quotation marks omitted). Given the distinctiveness of these elements, the extent to which they were replicated in the defendant's products rendered the obvious differences between the designs too "trivial" to defeat the plausibility of the plaintiff's allegation of substantial similarity.[4]

In contrast, the Ninth Circuit recently found categorically ineligible for protection the positioning of two dolphins crossing one another, as depicted in the plaintiff's picture (left) and as allegedly imitated in the defendant's picture (right):

 

---

[4] The court's decision thus shared features with the First Circuit's decision in Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62 (1st Cir. 2009), which held that "several elements of a toy tree frog were protectible, including the placement of a Puerto Rican flag stitched to the frog's underbelly, as well as the frog's 'distinctive stitching pattern,' 'idiosyncratic color combination,' 'pose,' and 'dimensions,' when combined with the aforementioned elements,'" because "these elements were not 'inevitable concomitants of an effort to produce an anatomically correct portrayal of the [frog].'" L.A. T-Shirt, 2017 WL 3575699, at *6 (quoting Coquico, Inc., 562 F.3d at 69).

11

See Folkens, 882 F.3d at 775. The court explained that, because "dolphins are social animals, often depicted swimming in groups -- as they are found in nature" -- the plaintiff's positioning of them "require[ed] no stretch of the . . . imagination." Id. at 776. The court thus held that the plaintiff owned "a thin copyright [specific to] his expression of the two [crossing] dolphins in dark water, with ripples of light on one dolphin, in black and white," and that the defendant's picture was not substantially similar to "the protectable elements [constituting] that . . . thin copyright." Id.

The "gaze and expression," "pose," and "grooming" of Tinkerbelle bear no relation to the fanciful elements considered in L.A. T-Shirt; they are instead analogous to the positioning of the dolphins in Folkens. Given the low order of originality thus embodied in the Tinkerbelle picture, that picture is "protect[ed] against only virtually identical copying." Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); accord Billco Int'l, Inc., 776 F. Supp. 2d at 114 ("[Such] thin copyright [protection] means that only exact or nearly exact copies may constitute infringement." (citing Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., 509 F.2d 64

(2d Cir. 1974))); see also Folkens, 882 F.3d at 775. In view of the many differences between the works at issue,[5] even assuming arguendo Origami's appropriation of the three elements Carrell deems key,[6] the Court finds as a matter of law that substantial similarity does not exist here. Accordingly, Carrell's claim for copyright infringement fails, and her proposed claim for contributory infringement would necessarily fail as well. See Matthew Bender & Co. v. W. Pub. Co., 158 F.3d 693, 706 (2d Cir. 1998).

---

[5] As an initial matter, the two images differ materially "with respect to [several] individual element[s]" of each. Silberstein, 242 F. App'x at 722. For example, the dogs depicted in the two images have considerably different coloring: Lucy's body is predominantly white, while nearly half of Tinkerbelle's body is black; Lucy has a distinctively brown neck, while there is no indication that Tinkerbelle (whose neck is covered by a collar) shares that feature; and Lucy's face is almost entirely white, with mere accents of black around her brow and ears, while practically the entire upper portion of Tinkerbelle's face is black. The two dogs are also differently proportioned, with Lucy presenting a considerably thinner body and neck than Tinkerbelle. Further distinctive are the dog's mouths: while Lucy's smirk extends broadly from pupil to pupil, Tinkerbelle's pout does not even extend to the near corners of her eyes. Finally, the two dogs are accessorized with wholly incomparable collars. See also ECF No. 38 at 13-14.

Nor do the images share a similar "total concept and feel." Id. (quoting Boisson v. Banian, Ltd, 273 F.3d 262, 272 (2d Cir. 2001)). While the Tinkerbelle picture is a photograph of an actual dog, the Lucy picture merely depicts a fake dog through paint. See id. (finding that a "lifelike . . . and realistic" rodent animation "differ[ed] markedly" from a "drawn two-dimensional" rodent cartoon in terms of total concept and feel). Moreover, while viewers of the Tinkerbelle picture are directed to Tinkerbelle herself -- the sole subject of the image -- the clear focus of the Lucy picture is the PAWS locket worn on Lucy's neck.

[6] The Court questions whether Tinkerbelle and Lucy can fairly be said to share a common "gaze and expression." Moreover, on the issue of "pose," while Tinkerbelle is clearly sitting, the angle of Lucy's back suggests that she may well be standing.

**B. Trademark Infringement**

In order to state a claim for trademark infringement, a plaintiff must plausibly allege that (1) the plaintiff's mark is entitled to protection and (2) the defendant's use of an allegedly infringing mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods. See Savin Corp. v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004). The Court assumes Carrell's satisfaction of the first of these prongs.

"[T]he crucial issue in an action for trademark infringement . . . is whether there is any likelihood that an *appreciable number of ordinarily prudent purchasers* are likely to be . . . confused[] as to the source [or sponsorship] of the goods in question." Id. (first and second alteration in original) (emphasis added) (internal quotation marks omitted). Answering this question typically requires "a fact-intensive analysis that . . . does not lend itself to" dismissal at the pleading stage. The Name LLC v. Arias, No. 10 CIV. 3212 RMB, 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010) (internal quotation marks omitted). But where, as here, "simply looking at the [marks themselves] . . . demonstrates how implausible it is that" an appreciable number of ordinarily prudent purchasers would be confused as

14

to source or sponsorship, a "court[] [may] dispose[] of [a] trademark [infringement] claim[]" on a motion to dismiss. Roberts v. Bliss, 229 F. Supp. 3d 240, 251 (S.D.N.Y. 2017) (quoting Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc., 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012)); see, e.g., Gottlieb Dev. LLC v. Paramount Pictures Corp., 590 F. Supp. 2d 625, 635 (S.D.N.Y. 2008) (Chin, J.) (dismissing a trademark infringement claim because it was "simply not plausible" that the defendant's allegedly infringing use of a mark "would confuse ordinarily prudent consumers as to [] sponsorship or affiliation"); Eliya, Inc. v. Steven Madden, Ltd., 749 F. App'x 43, 47–48 (2d Cir. 2018). "[T]he [C]ourt is satisfied that the . . . marks [at issue in this case] are so dissimilar that no question of fact [as to the likelihood of confusion] is presented."[7] Medina v. Dash Films, Inc., No. 15-CV-2551 (KBF), 2016 WL 3906714, at *5 (S.D.N.Y. July 14, 2016) (internal quotation marks omitted).

The Lucy picture and the Tinkerbelle logo are substantially different in numerous material respects. For example, while the Lucy picture depicts the upper portion of

---

[7] The Court assumes arguendo, in Carrell's favor, that Origami has used its depiction of a dog in the Lucy picture as a mark. See 15 U.S.C. § 1115(b)(4) (providing an affirmative defense to a claim of trademark infringement where "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . which is descriptive of and used fairly and in good faith only to describe the [defendant's] goods or services").

15

a sitting or standing dog, the Lucy logo is composed solely of a disembodied dog's face. While that dog's face is rendered in black and white, the full-bodied dog in the Lucy picture has a brown neck, with light brown accents above the eyes, on the cheeks, and around the mouth, as well as what appears to be the start of a partially brown back. Even if the Lucy picture depicted only the dog's face and rendered it in black and white,[8] it would still have different coloring than the Lucy logo, particularly throughout its brow, head, and ears. The two faces, in any color, are further distinguished by their meaningfully different expressions: while the dog in the Lucy picture wears an intense or playful smirk with squinting eyes, the Tinkerbelle logo is almost entirely devoid of expression, with a small, straight mouth and wide eyes staring into nothing. But perhaps most importantly, the dog in the Lucy picture is prominently adorned with a collar bearing a name tag labeled "Lucy," making it exceedingly implausible that an ordinarily prudent purchaser would associate the image with *Tinkerbelle* the dog.

---

[8] Considering the marks in this way is unduly generous to Carrell, as "one must assess [the] likelihood of confusion by reference to the marks in their entirety and not merely [by] focusing on similar elements in marks which, taken as a whole, are not confusingly similar." Guthrie Healthcare Sys. v. ContextMedia, Inc., 826 F.3d 27, 38-39 (2d Cir. 2016) (internal quotation marks omitted).

Ultimately, the two images merely depict dogs that could be classified as members of the same wide variety of breeds. But as Origami puts it, "[n]o visual elements connect [the Tinkerbelle logo] to the Lucy [picture] that would not also connect [the Tinkerbelle logo] to one of thousands of other images of similar breeds of dog." ECF No. 38 at 20. In other words, "[n]o reasonable observer would view the Lucy [picture] and mistake it for [the Tinkerbelle logo] any more than any [number of] other dog image[s] might [theoretically] be mistaken for [the Tinkerbelle logo]."[9] Id.; see Guthrie Healthcare Sys., 826 F.3d at 37 ("[S]atisfaction of the likelihood-of-confusion standard requires a probability of confusion, not a mere possibility." (internal quotation marks omitted)).

It is therefore unsurprising that Carrell's proposed allegations of consumer confusion are based on purported similarities between the Lucy picture and *Tinkerbelle* herself (or, at most, the Tinkerbelle picture), rather than the totally different Tinkerbelle *logo* that is actually the subject of Carrell's trademark infringement claim. See,

---

[9] This reality reflects the weakness of the mark at issue. See Guthrie Healthcare Sys., 826 F.3d at 41 ("The first pertinence of the strength of a mark has to do with likelihood of public confusion."); cf. Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1077-78 (2d Cir. 1993).

17

e.g., ECF No. 33, Ex. A at 14 (alleging that confusion as to sponsorship has arisen "due to the similarities between *Tinkerbelle* and 'Lucy'" (emphasis added)); see also Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961) (tethering the likelihood of confusion analysis, in relevant part, to "the degree of similarity between the two *marks*" (emphasis added)). But Carrell's trademark rights do not extend to Tinkerbelle's appearance, and she cannot in this way state a plausible claim for trademark infringement by merely repackaging her claim for copyright infringement -- which fails for the reasons stated above -- as an action under the Lanham Act. Accordingly, Carrell's proposed trademark infringement claim -- as well as her proposed claim for false designation of origin, which likewise depends on a likelihood of confusion, see, e.g., Where to Dine In, LLC v. Great Kosher Restaurants Magazine, LLC, 632 F. Supp. 2d 355, 356 (S.D.N.Y. 2009), and her proposed claim for contributory trademark infringement, which definitionally requires that direct infringement occurred, see 4 McCarthy on Trademarks and Unfair Competition § 25:17 (5th ed.) -- would be futile.

## IV. Conclusion

For the foregoing reasons, Carrell's motion for leave to amend her complaint is denied and Origami's motion for judgment on the pleadings is granted.

18

The Clerk of Court is respectfully directed to terminate the motions currently pending at ECF Nos. 29 and 35 and to close the case.

**SO ORDERED.**

Dated:    New York, New York
         March 25, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE